**BOYD BROTHERS TRANSP. COMPANY, INC.,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 90–71T.

United States Court of Federal Claims.

Feb. 19, 1993.

---

the other hand, if an employee chose reimbursement, and travel expenses and wages were combined in a single payment, FICA taxes potentially could prove unrecoverable on the ground that there had not been a timely identification of the specific amounts paid as wages and for travel expenses.

510

Gerald A. Kafka and Rita A. Cavanagh, Washington, DC, for plaintiff; Richard C. Hutchison, Salt Lake City, UT, of counsel.

Mildred L. Seidman, David Gustafson, and Ellen C. Specker, with whom was Acting Asst. Atty. Gen. James A. Bruton, Washington, DC, for defendant.

## OPINION *

ANDEWELT, Judge.

In this tax refund action, plaintiff, Boyd Brothers Transportation Company, Inc., an interstate trucking company, seeks reimbursement of Federal Insurance Contributions Act (FICA) taxes plaintiff alleges it erroneously overpaid for the eight tax quarters of 1985 and 1986. This action is presently before the court on the parties' cross-motions for partial summary judgment. On December 30, 1992, this court issued an opinion in which the court interpreted one aspect of Treas.Reg. § 31.-3121(a)–1(h), the regulation which describes when an employer's payments to its employees for travel and other business expenses are not subject to FICA taxes. *Boyd Brothers Transp. Co. v. United States*, 27 Fed.Cl. 502 (1992). The instant opinion resolves certain issues left open in the December 30 opinion.

### I.

As the court explained in its December 30, 1992, opinion, plaintiff employs long-

haul, interstate truck drivers who, during 1985 and 1986, spent an average of 294 days per year on the road on company business. While on the road, these drivers incurred travel expenses for food, lodging, showers, and other incidentals. During 1985 and 1986, plaintiff had an advance policy pursuant to which each Friday, those drivers "[who were scheduled to be] out on the week-end, not coming home or not at [their] home terminal[s]," had the option of securing weekly advances in increments of $25, up to $100. Plaintiff based this policy, *inter alia*, on discussions with its drivers, a survey of expense payments offered by other trucking firms, and plaintiff's experience that if plaintiff advanced its drivers too much money, the drivers would spend more than needed on the road and thus, bring home insufficient funds for their families. From this information, plaintiff concluded that $100 was a reasonable maximum amount to advance its drivers for expenses incurred in a normal week on the road.

In calculating its FICA taxes due for 1985 and 1986, plaintiff contends that it erroneously treated its entire weekly remunerations to its drivers, including the advances, as "wages" subject to FICA taxes. Plaintiff contends that under Treas. Reg. § 31.3121(a)–1(h), portions of these weekly remunerations, including all of the advances, should have been treated as "not wages" and thus excluded from FICA taxation. In the instant action, plaintiff seeks a refund of FICA taxes it allegedly has overpaid as a result of this error.

## II.

Treas.Reg. § 31.3121(a)–1(h) sets forth the circumstances under which an employer's remunerations to its employees for travel and other business expenses do not constitute "wages" and, hence, are not subject to FICA taxes. Section 31.3121(a)–1(h) addresses both advances and reimbursements for travel expenses and provides, in pertinent part:

Amounts paid specifically—either as advances or reimbursements—for traveling or other bona fide ordinary and nec-

essary expenses incurred or reasonably expected to be incurred in the business of the employer are not wages. Traveling and other reimbursed expenses must be identified either by making a separate payment or by specifically indicating the separate amounts where both wages and expense allowances are combined in a single payment.

With respect to FICA tax treatment of the Friday advances, the dispute between the parties relates to the requirements contained in the first sentence of the regulation, *i.e.*, whether the monetary advances were "[a]mounts paid specifically . . . as advances . . . for traveling . . . expenses . . . reasonably expected to be incurred[.]" If the advances satisfy these requirements, the advances necessarily would qualify as "not wages" under the regulation because the parties agree that the advances satisfy the identification requirement contained in the second sentence of the regulation. Plaintiff paid the advances separately from any remuneration for services, and a separate payment for travel expenses constitutes adequate identification under the second sentence.

As to the requirements contained in the first sentence of the regulation, defendant contends that the advances herein were not "[a]mounts paid specifically . . . as advances . . . for traveling . . . expenses . . . reasonably expected to be incurred," because the advances were part of the drivers' general compensation, and the drivers did not have to prove that they used the advances for travel expenses. Defendant relies primarily upon plaintiff's "Driver Manual" which describes plaintiff's advance policy during the relevant time period, as follows:

When a driver is out on the week-end, not coming home or not at his home terminal, Boyd Brothers, if requested, will advance a driver up to $100.00 of his money for personal expenses. This money is to be advanced on *Friday only* and will be deducted from next Friday's paycheck. This comes in $25.00—$50.00—$75.00—or $100.00. If you only need $50.00—that is what you ask for—but if

you need $100.00 get it—don't call in two or three times a week for personal money. *"FRIDAY ONLY."*

(Emphasis in original.) Defendant argues that this reference in the "Driver Manual" to an advance involving "[the driver's] money" indicates that such advances were part of the drivers' compensation rather than payments for travel expenses. Additionally, defendant emphasizes that the "Driver Manual" provides that the advances are for "personal expenses," and thus does not oblige the drivers to use the advances for travel or other business expenses.

Defendant's argument reads restrictions into Treas.Reg. § 31.3121(a)–1(h) that simply are not present in the wording of the regulation. The first sentence of the regulation requires that an employer must reasonably intend "at the time of payment" that the payment cover travel expenses (*i.e.*, that the "[a]mounts [are] paid specifically ... for traveling ... expenses") and that the amount of the payment be an amount to cover "traveling ... expenses incurred or reasonably expected to be incurred in the business of the employer." Contrary to defendant's argument, the first sentence of the regulation does not contain any additional requirements concerning how the employer or employee chooses verbally to categorize such payment or how an employee chooses to use the amounts "paid specifically ... for traveling ... expenses." It is not pertinent whether the employee actually uses the specific payment for his or her travel expenses[1] or whether the employer, or employee, characterizes the payment intended to cover travel expenses as part of the employee's general compensation or as an addition to that compensation.

Regarding an employer's characterization of advance payments, defendant is correct that during 1985 and 1986, plaintiff did not understand that "[a]mounts paid specifically ... for traveling ... expenses" might not constitute "wages" subject to FICA taxes. As a result, at the time of payment, plaintiff viewed the amounts it was advancing to its drivers to cover travel expenses as part of the employees' general compensation. But, as described above, the undisputed facts demonstrate that plaintiff instituted its advance policy specifically to cover the drivers' expected travel expenses. The references in the "Driver Manual" to the effect that an advance involved the driver's money, *i.e.*, "his money," and covered "personal expenses," do not suggest the contrary. Thus, as long as the advances are in an amount "reasonably expected to be incurred" for travel expenses, and as long as plaintiff paid that amount specifically for travel expenses, the requirements of the first sentence are satisfied. Here, because the requisite intent existed, and defendant has not presented any evidence to dispute plaintiff's showing that the advances constituted amounts "reasonably expected to be incurred," the statutory requirements of the first sentence of Treas.Reg. § 31.3121(a)–1(h) are satisfied. Because the advances have also met the identification requirement contained in the second sentence of the regulation, the advances are not "wages" subject to FICA taxes.

### III.

The parties also disagree with respect to plaintiff's obligation to pay FICA taxes on

---

1. The court finds especially perplexing defendant's contention that the advances herein constitute "wages" subject to FICA taxes because plaintiff's drivers were not obliged to use the advanced funds specifically for travel expenses. There is no apparent reason why an employer, an employee, or the IRS would possibly be interested in whether an employee uses the money advanced specifically to pay for travel expenses or whether the employee instead uses money he or she previously earned to pay for the travel expenses and then, in turn, uses money advanced for other purposes. Indeed, the absence of any concern as to whether an employee uses the advanced money specifically for travel expenses is apparent in that the regulation does not require that the amount of the advance match the precise amount of travel expenses. Because the regulation requires that the payment cover expenses "reasonably expected to be incurred," the regulation necessarily anticipates that at least a portion of the money advanced for travel expenses, and thus not subject to FICA taxes, ultimately may not be needed to cover such expenses. Moreover, the first sentence of the regulation contains the words "[a]mounts paid specifically" not amounts *spent* specifically.

the weekly payments it made to its drivers where the drivers had not secured a $100 advance for that week. Plaintiff contends that in such a situation, plaintiff intended its weekly payment to its drivers to encompass both remuneration for work performed and a reimbursement for travel expenses incurred. Plaintiff then argues that under Treas.Reg. § 31.3121(a)–1(h), plaintiff did not owe FICA taxes on the portion of these "single payment[s]" that covered reimbursement for travel expenses. Defendant disagrees and contends that under Treas.Reg. § 31.3121(a)–1(h), no portion of these "single payment[s]" may be treated as "not wages." Upon review, defendant is correct. Even assuming plaintiff has satisfied the intent requirement in the first sentence of the regulation, plaintiff cannot satisfy the identification requirement contained in the second sentence.

■ In its December 30, 1992, opinion, this court discussed at length the second sentence of Treas.Reg. § 31.3121(a)–1(h). *Boyd*, at 504–05. The court concluded that where wages and remuneration for travel expenses are combined in a single payment, the regulation requires identification of the separate amounts paid for wages and for travel expenses "at the time of payment." In its motion for partial summary judgment, plaintiff contends, in effect, that it satisfied this requirement when it submitted to the IRS Forms W–2c, Forms 941c, or Forms 843. But, because plaintiff completed these forms years after it made the pertinent payments, these forms do not qualify as an identification "at the time of payment."

■ In the alternative, plaintiff contends that prior to making the "single payment[s]" at issue, it had a "mutual understanding" with its drivers, which is corroborated in the "Driver Manual," concerning the payment of travel expenses, and that this "mutual understanding" is sufficient to satisfy the "at the time of payment" identification requirement in the regulation. To support this contention, plaintiff relies upon Rev.Rul. 55–196, 1955–1 C.B. 492; Priv.Ltr.Rul. 80–52–038 (Sept. 30,

1980); and Priv.Ltr.Rul. 85–31–006 (Apr. 4, 1985).

But these IRS pronouncements do not demand a conclusion that plaintiff has satisfied the identification requirement with respect to the "single payment[s]" that allegedly covered both compensation for work performed and reimbursement for travel expenses. Rev.Rul. 55–196 involved an employer-employee agreement which provided that payments to the employee would first be applied to reimburse the employee for travel expenses. The IRS concluded, in effect, that with respect to payments made after the agreement, this preexisting agreement was sufficient to satisfy the first requirement of Treas.Reg. § 31.3121(a)–1(h). However, the IRS stressed that the regulation also included a second requirement that there be an "at the time of payment" identification of the specific amounts paid for travel expenses and for wages. The IRS explained:

A provision in an oral or written contract of employment or in a collateral agreement, to the effect that any payments made or advanced against earned commissions are first to be applied to reimburse the traveling salesman for traveling or other bona fide ordinary and necessary expenses, will satisfy the first requirement of the regulations. It is further necessary, however, that the portion thereof which represents reimbursement for expenses be properly identified at the time of payment.

In both Priv.Ltr.Rul. 80–52–038 and 85–31–006, the IRS cited Rev.Rul. 55–196 and reiterated this second requirement of an identification "at the time of payment."

These IRS pronouncements do not stand for the proposition that a written agreement or understanding that is created prior to the time of payment can never in itself qualify as the required identification under the second sentence of Treas.Reg. § 31.-3121(a)–1(h). A written agreement or understanding entered prior to the time of a payment potentially can constitute an "at the time of payment" identification if the written agreement or understanding explains the employer's practice as to travel

expenses "at the time of payment." But in determining whether such an agreement or understanding qualifies as such an identification, it is necessary to focus on the unambiguous requirements in the regulation. To qualify as an identification under Treas. Reg. § 31.3121(a)–1(h), an agreement or understanding must "specifically indicat[e] the separate amounts where both wages and expense allowances are combined in a single payment."

Here, the written embodiment of the "mutual understanding" upon which plaintiff relies is the provision from the "Driver Manual" which provides that cash advances are available to drivers each Friday in $25 increments, up to $100. But this understanding does not "specifically indicat[e]" the separate amounts paid for wages and for travel expenses with respect to the numerous "single payment[s]" made by plaintiff during 1985 and 1986. For example, if a driver spent most of a particular week at home and drove only sufficient miles to earn $90, the IRS could not calculate from the provisions in the "Driver Manual" what portion of that $90 covered travel expenses and what portion covered wages. The same is true if a driver earned $100, $200, $500, or any amount in between. Hence, assuming that a prior written agreement or understanding can be sufficient to satisfy the identification requirement in Treas.Reg. § 31.3121(a)–1(h), the written understanding here is not sufficient because it does not permit a determination of the precise amount of each check that covered travel expenses.[2]

## IV.

In its December 30, 1992, decision, this court anticipated that it might, as it has done herein, reach the arguably anomalous result that the advances plaintiff paid to its drivers were not subject to FICA taxes, but the entirety of plaintiff's "single payment[s]" were subject to FICA taxes. The court explained:

The instant case potentially could produce results that could be deemed anomalous. For example, it is possible that plaintiff could demonstrate that at the time of payment it intended certain payments or portions of those payments to cover travel expenses. If plaintiff can make such a demonstration of intent, the ability of plaintiff and its employees to recover previously paid FICA taxes could depend upon the rather fortuitous event of whether the employees chose to receive payments for travel expenses in the form of an advance or chose instead reimbursement of the expenses in a single check along with wages. If an employee chose an advance, a sufficient identification under the regulation arguably occurred because a separate payment was made covering only travel expenses. On the other hand, if an employee chose reimbursement, and travel expenses and wages were combined in a single payment, FICA taxes potentially could prove unrecoverable on the ground that there had not been a timely identification of the specific amounts paid as wages and for travel expenses.

*Boyd*, at 508–09 n. 13.

While the disparate tax treatment this court ultimately gives to the two types of payments can be viewed in one sense as anomalous, in another sense, the result seems reasonable and even predictable. Treas.Reg. § 31.3121(a)–1(h) sets forth specific requirements for payments to be treated as "not wages" and, hence, free from FICA taxation. As the court explained in its December 30, 1992, decision, the IRS apparently established these rigid

---

**2.** After becoming aware of the implications of Treas.Reg. § 31.3121(a)–1(h), plaintiff apparently changed its advance procedures so as to provide an "at the time of payment" identification. In its motion for partial summary judgment, plaintiff explains its procedures for tax years after 1986 as follows:

For calendar years after 1986, plaintiff has treated five cents per book mile of the base rate compensation paid to its long-haul driv-

ers as reimbursement for away from home travel expenses and has not withheld FICA taxes on such amounts. These travel amounts have been identified as "expense reimbursement" on a driver's settlement sheets, on a driver's paycheck, and on the year-end Form W–2 for a driver. *Id.* The Internal Revenue Service has not challenged this FICA tax treatment.

requirements in order to facilitate the enforcement of 26 U.S.C. § 3121, the statute underlying the regulation at issue herein. *Boyd*, at 508–09. Here, when plaintiff made the disputed payments to its drivers, it apparently was unaware of the requirements of Treas.Reg. § 31.3121(a)–1(h), and was acting based upon the assumption that all of plaintiff's payments to its employees were subject to FICA taxes. Thus, the court ultimately is determining whether plaintiff, when acting under the assumption that the Internal Revenue Code required FICA taxes on the payments in issue, happened by chance to satisfy a regulation that sets forth conditions under which such payments are not subject to FICA taxes.

But the requirements of tax laws generally, and of the instant regulation specifically, are such that one would not expect a taxpayer to end up complying with the pertinent tax requirements without first considering them and making a conscious effort to comply. Viewed in this light, it is not surprising that plaintiff's apparent blindfolded walk through the tax regulations ended with plaintiff satisfying the requirements of the regulation for certain payments, *i.e.*, the advances, but not for other payments, *i.e.*, the "single payment[s]." To the extent that plaintiff has suffered economically as a result, the fault lies, if anywhere, with plaintiff for making the payments in issue without first adequately considering the controlling regulations.

## V.

Summary judgment is appropriate where there is no material issue of fact in dispute, and the moving party is entitled to judgment as a matter of law. RCFC 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Here, the parties dis-

cussed the material issues of fact in their briefs and again during oral argument. Neither party has pointed to a material issue of fact that is in dispute with respect to the application of Treas.Reg. § 31.-3121(a)–1(h). Applying the apparently undisputed facts to the law,[3] for the reasons set forth above, the court concludes that under Treas.Reg. § 31.3121(a)–1(h), plaintiff was not obliged to pay FICA taxes on the advances it paid to its drivers during 1985 and 1986 but was obliged to pay FICA taxes on the entirety of the "single payment[s]."

## *Conclusion*

For the reasons set forth above, plaintiff's motion for partial summary judgment is granted to the extent plaintiff contends that under Treas.Reg. § 31.3121(a)–1(h), the advances plaintiff paid to its drivers during 1985 and 1986 were not subject to FICA taxes. Similarly, partial summary judgment would be warranted for defendant to the extent defendant contends that under that same regulation, the "single payment[s]" plaintiff made to its drivers during 1985 and 1986 were subject to FICA taxes.

The parties shall make a reasonable effort to reach a stipulation as to the amount due plaintiff pursuant to this decision. In the event the parties are unable to reach a stipulation, and the parties do not previously reach a settlement, on or before April 5, 1993, the parties shall file a joint status report advising the court as to the issues remaining to be resolved and proposing scheduling for presentation of those issues to the court.

IT IS SO ORDERED.

---

**3.** The court permitted additional discovery after the parties had finished briefing their original cross-motions for partial summary judgment. Although the court allowed the parties to file supplemental briefs, it did not require the parties to submit additional proposed findings of uncontroverted facts or statements of genuine issues. But it appears from the original filings and the concessions made by the parties during oral argument that there is no material issue of fact in dispute. To the extent that either party contends that there is a material issue of fact in dispute and that that party has not previously conceded that fact and has not had ample opportunity to present its arguments, that party should explain its position in a motion for reconsideration of this opinion.