**AMERICAN AIRLINES, INC.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 98–5126.**

United States Court of Appeals,
Federal Circuit.

Feb. 24, 2000.

Peter D. Isakoff, Weil, Gotshal & Manges LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Mary B. Hevener, David A. Hickerson, and Marianna G. Dyson.

Annette M. Wietecha, Attorney, Tax Division, Appellate Section, Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Loretta C. Argrett, Assistant Attorney General; and Gilbert S. Rothenberg, Attorney.

Before SCHALL, Circuit Judge, SMITH, Senior Circuit Judge, and BRYSON, Circuit Judge.

EDWARD S. SMITH, Senior Circuit Judge.

In this federal employment taxes refund case, American Airlines, Inc. ("American") appeals from the final decision of the United States Court of Federal Claims granting the United States' motion for summary judgment. *See American Airlines, Inc. v. United States,* 40 Fed.Cl. 712 (1998). We find that there remains no genuine issue of material fact and *affirm* the judgment of the Court of Federal Claims with regard to its grant of summary judgment on the issue of the American Express vouchers. We also *affirm* the judgment of the Court of Federal Claims on the issue whether American's per diem allowances qualify as a working condition fringe benefit because the court correctly held that they are not excludable under Internal Revenue Code ("I.R.C.") § 132(a)(3). However, with regard to the Travel Expense Regulations, we find that a factual dispute exists as to whether American reasonably believed its per diem rates were at or below the actual expenses incurred by its employees during travel. Accordingly, we *reverse* the judgment of the Court of Federal Claims with regard to its grant of summary judgment that American's refund claim was not supported by the Travel Expense Regulations, and *remand* the case to that court.

*Background*

During the years 1985 through 1988, American provided a per diem allowance to its pilots, flight engineers and flight attendants (collectively "flight crew employees") for meals and incidental expenses while away on both overnight trips

(travel requiring at least one overnight stay away from a flight crew employee's home base) and turnaround trips (travel involving departure and return on the same day).[1] American contends that it based the amounts of its per diem payments on a variety of sources, including the amounts paid by other airlines, experience of American's own management, rates of per diems paid to federal employees, and cost estimates of Runzheimer International, a consulting firm. The flight crew employees' paychecks included both wages and per diem allowance payments, and the paycheck stubs separately identified the portion attributed to each. American did not require its flight crew employees to substantiate their actual travel expenses. American contends that it treated the per diem payments as travel expense reimbursements not subject to withholding.

During these years, American also provided its pilots and flight engineers based in Dallas–Fort Worth ("DFW") eight hours of this per diem allowance for each day of training at the DFW facility. In addition, union contracts required American to provide on-board meals for pilots and flight engineers on flights of certain lengths and at certain times of day. The meals were the same as those served to passengers and were provided as a "safety measure." American contends that it treated the on-board meals as "furnished for the convenience of the employer," and therefore exempt from withholding.

In 1985, a major competitor's labor strike caused American employees to take on substantially increased passenger loads. As a gesture of appreciation, American gave each employee two $50.00 "Be My Guest" American Express restaurant vouchers. The vouchers were blank American Express charge forms bearing American's account number and an amount of "not to exceed $50." The vouchers were not issued in the particular recipient's name, and could have been redeemed for less than full value.[2] The vouchers were distributed in June 1985 and expired on December 31, 1985. Approximately $4,139,100 in vouchers were redeemed by American's employees and paid for by American, out of a total of approximately $4,250,000 in vouchers issued.[3] American contends that it treated the vouchers as a *de minimis* fringe benefit not subject to withholding based on their small value, the one-time distribution, and the administrative difficulty of tracking whether an employee actually redeemed the vouchers and how much value was actually received for them.

During the years at issue, American did not withhold federal income taxes or Federal Insurance Contributions Act ("FICA" or "Social Security Act") taxes on any of the per diem allowance payments to its flight crew employees. American also did not withhold income or FICA taxes for on-board meals furnished to pilots and flight engineers, or for the American Express vouchers.

On audit, the Internal Revenue Service (IRS) concluded that American should have treated as wages, and withheld employment taxes from: (1) one-sixth of all per diem payments for overnight trips, (2) all per diems for turnaround trips and DFW training, (3) ten dollars for each on-board meal provided to pilots and flight engineers, and (4) the full face value of the American Express vouchers. The IRS issued an assessment of $14,800,374 in taxes and $339,954 in penalties for a total of

1. The rate for the per diem allowance, fixed by collective bargaining agreements, was $1.50 per duty hour for a maximum allowance of $36 per day. Prior to August 1, 1985, the rate for flight engineers and pilots was $1.45 per duty hour. The rates did not vary to reflect travel in higher (or lower) cost areas.

2. This was American's only company-wide credit card voucher program during the years at issue.

3. Approximately 97.4% of the total value of the vouchers were redeemed.

$15,140,328. American paid the full assessment and filed refund claims for the full amount. The IRS disallowed American's claims.

### Proceedings in the Court of Federal Claims

On October 6, 1995, American filed suit in the Court of Federal Claims, seeking a refund of the $15,140,328 IRS assessment. American contended that the per diem allowances for its flight crew employees and the on-board meals for pilots and flight engineers qualified as travel expenses excludable from wages or, alternatively, as "working condition" fringe benefits. *See American Airlines*, 40 Fed.Cl. at 717. American also contended that the American Express vouchers qualified as a *de minimis* fringe benefit within the meaning of I.R.C. § 132(a)(4); thus the benefits it conferred upon its employees were exempt from federal employment taxes.[4] *See American Airlines*, 40 Fed.Cl. at 717.

On cross-motions for summary judgment, the Court of Federal Claims granted summary judgment in favor of the United States ("Government"). *See id.* at 714. The trial court placed the burden on American, as the refund applicant, to show that the benefits at issue were not subject to income or FICA taxes or, at least to show that American could not have known, by examining the relevant statutes, regulations, and IRS pronouncements, that it had income or FICA tax withholding obligations with respect to such benefits. *See id.* at 719.

The Court of Federal Claims held that the per diem payments for overnight trips were not excludable from wages, because American had not shown that the amounts of the per diem allowances were based on expenses reasonably expected to be incurred, and, therefore, could not meet the requirements of Treas. Regs. § 31.3401(a)–1(b)(2) and § 31.3121(a)–1(h).[5] *See American Airlines*, 40 Fed.Cl. at 722. Further, the court relied on Rev. Rul. 84–164, 1984–2 C.B. 63 (effective December 31, 1982), issued pursuant to I.R.C. § 274(d) and Treas. Reg. § 1.274–5, in concluding that in the absence of substantiation, $14 per day was objectively reasonable for meal expenses. *See American Airlines*, 40 Fed.Cl. at 721–22. Thus, the trial court held that per diem payments in excess of $14 should be treated as wages.[6] *See id.* at 722.

The trial court also rejected American's argument that the per diem payments for overnight trips should be treated as a working condition fringe benefit pursuant to I.R.C. § 132(a)(3), because such treatment would require that the employer substantiate the amount of such expenses or have a reasonable belief that the employees were keeping adequate records to substantiate their expenses over $14 per day. *See American Airlines*, 40 Fed.Cl. at 722. As previously discussed, American did not require its employees to substantiate their actual traveling expenses. Further, the court found that on the facts of this case, it was not reasonable for American to believe that the flight crew employees were meeting the substantiation requirements of I.R.C. § 274(d). *See American Airlines*, 40 Fed.Cl. at 722. Therefore, the court held that the only amount that American could assume would qualify for the working condition fringe benefit exclusion from income, would be the amount that it had determined to be reasonable in the absence of substantiation. *See* Rev. Rul. 84–164.

---

4. Citations to the Internal Revenue Code are to the I.R.C. of 1954, as amended, as codified at 26 U.S.C. and in effect at the relevant time.

5. Citations to sections of the Treasury Regulations are to the regulations codified at 26 C.F.R., as in effect at the relevant time.

6. The IRS had previously assessed $6 of the $36 per diem amount for overnight trips to be treated as wages. However, the Court of Federal Claims found that $22 of the $36 per diem amount for such trips should be treated as wages.

The Court of Federal Claims also held that per diem payments for turnaround trips did not meet the requirements of Treas. Regs. § 31.3401(a)–1(b)(2) and § 31.3121(a)–1(h), which require that the expenses be "reasonably expected to be incurred" before being excluded from wages. *See American Airlines,* 40 Fed. Cl. at 723. The court reasoned that the per diem for turnaround trips was paid to all employees, including pilots and flight engineers whose receipt of on-board meals eliminated a meal expense. Further, the court reasoned that while flight attendants do not receive on-board meals, it is unlikely that they would incur most of the incidental expenses covered by the per diem payments on turnaround trips. *See id.*

The trial court also held that the per diem payments for turnaround trips were not excludable from wages as working condition fringe benefits because such payments are not deductible under § 162(a)(2). *See* I.R.C. § 132(d); *United States v. Correll,* 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967) (restricting to overnight trips the travel expense deduction for meal costs under § 162(a)(2)).

In addition, the trial court rejected American's reliance on the "annual netting rule" established by Rev. Rul. 69–592, 1969–2 C.B. 193, because this revenue ruling applies on an employee-by-employee basis, and American made no effort to apply the rule to employees individually. *See American Airlines,* 40 Fed.Cl. at 723–24. Specifically, the court found that American did not produce evidence on an employee-by-employee basis to show that it reasonably believed that the actual overnight trip expenses of each employee sufficiently exceeded the overnight trip payments made to the employee for such trips so as to completely offset the turnaround and DFW training trip payments to the employee. *See id.*

As to the on-board meals, the Government conceded that the meals were not wages subject to withholding. However, the Government argued, and the trial court agreed, that American was not entitled to a refund on the taxes assessed for the value of the meals. *See id.* at 724. The court reasoned that because American should have treated $22 of the per diem allowance as wages, and not just $6 of that amount, the Government was entitled to offset the additional tax liability owed on the per diem payments against the taxes paid, but not owed, on the on-board meals. *See id.*

The Court of Federal Claims also held that the American Express vouchers were not excludable from wages as *de minimis* fringe benefits, because American had not shown that it was administratively impractical for it to account for the vouchers. *See id.* at 724–25. Further, the court held that the vouchers were a "cash-equivalent fringe benefit" because they were paid by credit card, and therefore expressly excluded from the definition of a *de minimis* fringe benefit pursuant to Treas. Reg. § 1.132–6T(c). *See American Airlines,* 40 Fed.Cl. at 725. The trial court concluded that it would not be administratively impracticable to account for a cash equivalent benefit, and that any impracticability was of American's own making. *See id.*

The trial court also rejected American's reliance on *Central Illinois Public Service Co. v. United States,* 435 U.S. 21, 98 S.Ct. 917, 55 L.Ed.2d 82 (1978), with American arguing that it could not reasonably suspect a withholding obligation existed at the time the vouchers were distributed. *See American Airlines,* 40 Fed.Cl. at 725. The court concluded that the language of I.R.C. § 132(e)(1) expressly provides notice that a fringe benefit does not qualify as a *de minimis* fringe unless accounting for the benefit would be unreasonable or administratively impracticable. *See American Airlines,* 40 Fed.Cl. at 725. Therefore the Court of Federal Claims granted summary judgment to the Government.

*Jurisdiction and Standard of Review*

This court has jurisdiction over an appeal from a final judgment of the Court of

Federal Claims. *See* 28 U.S.C. § 1295(a)(3) (1994). "We review a grant of summary judgment completely and independently, construing the facts in the light most favorable to the non-moving party." *Good v. United States,* 189 F.3d 1355, 1360 (Fed.Cir.1999). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Montana v. United States,* 124 F.3d 1269, 1273 (Fed.Cir.1997). A material fact is one that may affect the decision, whereby the finding of that fact is relevant and necessary to the proceedings. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While the non-moving party is not required to present its entire case in response to a motion for summary judgment, to defeat the motion the non-movant must present sufficient evidence to show an evidentiary conflict exists on the record as to the material fact in dispute, *see Armco, Inc. v. Cyclops Corp.,* 791 F.2d 147, 149, 229 USPQ 721, 722 (Fed.Cir.1986), with due consideration to the evidentiary burdens, *see Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

### Issues

This appeal raises three issues: (1) whether the Court of Federal Claims erred in holding that certain per diem payments are not excludable from wages as travel expense payments; (2) whether the Court of Federal Claims erred in holding that certain per diem payments are not excludable from wages as working condition fringe benefits; and (3) whether the Court of Federal Claims erred in holding that the American Express vouchers were not excludable from wages as *de minimis* fringe benefits.

### Burden of Proof

■ American argues that the Court of Federal Claims improperly placed the burden on American to prove that its withholding treatment was proper, rather than requiring the Government to demonstrate that, under the circumstances, American's obligation to withhold was "precise" and not "speculative". We disagree with American because case law does not support the burden that American seeks to impose on the Government. *See Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932) (stating that in a tax refund suit, the taxpayer has the burden of proving not only that it overpaid its taxes, but also the amount of its overpayment); *Bubble Room, Inc. v. United States,* 159 F.3d 553, 561 (Fed.Cir.1998) ("[T]he taxpayer has the burden of establishing entitlement to the specific refund amount claimed."); *Jones v. United States,* 178 Ct.Cl. 16, 371 F.2d 442, 446 n. 9 (1967) ("It is well established that taxpayers have the burden of proof in tax refund cases.").

### Travel Expense Regulations

Section 3402 of the I.R.C. requires employers to deduct and withhold federal income taxes from the wages of their employees. For purposes of income tax withholding, wages are "all remuneration ... for services performed by an employee for his employer, including the cash value of all remuneration (including benefits) paid in any medium other than cash...." I.R.C. § 3401. A "traveling expenses" exclusion from income tax withholding is established by Treas. Reg. § 31.3401(a)–1(b)(2), which provides:

Amounts paid specifically — either as advances or reimbursements — for traveling or other bona fide ordinary and necessary expenses incurred or reasonably expected to be incurred in the business of the employer are not wages and are not subject to withholding. Traveling and other reimbursed expenses must be identified either by making a separate payment or by specifically indicating the separate amounts where both wages and expense allowances are combined in a single payment.

Section 3102 of the I.R.C. requires that employers deduct FICA taxes from the wages of their employees. In addition, I.R.C. § 3111 imposes an excise tax on wages of an employee payable by the employer. Wages are defined under FICA as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash...." I.R.C. § 3121(a). A "traveling expenses" exclusion from FICA taxes is established by Treas. Reg. § 31.3121(a)–1(h), which provides:

> Amounts paid specifically — either as advances or reimbursements — for traveling or other bona fide ordinary and necessary expenses incurred or reasonably expected to be incurred in the business of the employer are not wages. Traveling and other expenses must be identified either by making a separate payment or by specifically indicating the separate amounts where both wages and expense allowances are combined in a single payment.

The income and FICA travel expense regulations are essentially identical (collectively the "Travel Expense Regulations"). Therefore, a determination as to one will apply to the other.

The Travel Expense Regulations contain two requirements: (1) that the amounts paid be specifically for travel and other expenses incurred or reasonably expected to be incurred by the employee while on company business; and (2) that the expense payments be specifically identified as such at the time of payment. The parties do not dispute that American clearly satisfied the second requirement by separately identifying on American's employees' pay stubs the amount for per diem payments. There is also no dispute that the payments did not reflect expenses actually incurred by American's employees, because American never required its employees to substantiate their actual expenses. Thus, the dispute reduces to whether American's per diem payments were made for expenses that were "reasonably expected" to be incurred.

American argues that it has met the "reasonable expectation" requirement in two ways: first, through American's collective bargaining agreements, and second, through independent objective information. American contends that its bargaining agreements provide the required "reasonable expectation" because the IRS has long recognized that "a provision in an oral or written contract of employment or in a collateral agreement" satisfies this requirement. *See e.g.,* Rev. Rul. 55–196, 1955–1 C.B. 492 ("A provision in an oral or written contract of employment or in a collateral agreement, to the effect that any payments made or advanced against earned commissions are first to be applied to reimburse the traveling salesman for traveling or other bona fide ordinary and necessary expenses, will satisfy the first requirement of the [travel expense] regulations."); *Boyd Bros. Transp. Co. v. United States,* 27 Fed.Cl. 509 (1993) (holding that an agreement between an employer and its truck driver employees in the form of a policy set out in a "Drivers Manual" satisfied the first requirement of the travel expense regulations), *aff'd,* 60 F.3d 843 (Fed.Cir.1995).

The Court of Federal Claims found, and we agree, that American's reliance on Rev. Rul. 55–196 is misplaced. *See American Airlines,* 40 Fed.Cl. at 719. As the trial court correctly found, the revenue ruling addresses only whether an employment agreement specifying that a certain portion of an employee's compensation be treated as reimbursement for travel expenses is sufficient to satisfy the requirement that amounts paid to reimburse the employee for travel expenses be specifically designated as reimbursements for such expenses. The revenue ruling does not address the issue whether the existence of an employment agreement, setting the amounts to be paid as advances toward expenses to be incurred at a later time,

makes those amounts "reasonably expected" to be incurred.

In addition, we agree with the Court of Federal Claims that American's reliance on *Boyd* is misplaced. *See American Airlines,* 40 Fed.Cl. at 720. In *Boyd,* the court allowed the agreement to satisfy the first requirement of the FICA travel expense regulations because the United States did not produce any evidence to dispute Boyd's showing that the travel advances constituted amounts "reasonably expected" to be incurred. *See Boyd,* 27 Fed.Cl. at 512. Thus *Boyd* is different from the case at bar. Further, nothing in the *Boyd* decision negates the travel expense requirement that the expenses be "reasonably expected" to be incurred. *See id.*

American also contends that it had independent objective information to support its reasonable expectation that the amount of the per diem payments was commensurate with its employees' actual expenses, including: travel cost studies prepared by Runzheimer International, a well-known international consulting firm specializing in such costs; the experiences of American's own management; per diem amounts paid by other airlines; and the Government's own per diem rates in 1986 and 1987.

■ On summary judgment, all disputed facts must be viewed in the light most favorable to the non-moving party. *See Good,* 189 F.3d at 1360. On review of American's proffered evidence, we find that a factual dispute exists concerning whether American reasonably believed its per diem rates were at or below its flight crew employees' actual expenses. The trial court excluded studies of business travel costs prepared by Runzheimer International on hearsay grounds, *see American Airlines,* 40 Fed.Cl. at 720–21, but since the Runzheimer studies were offered to show the reasonableness of American's belief that its per diem rates fairly represented its crews' actual expenses, those studies, which were supported by affidavits, were not excludable on hearsay

grounds and should have been available to American as evidence. Likewise, information about per diem rates used by government agencies, including the Internal Revenue Service, would appear to be pertinent to the reasonableness of American's belief that its per diem rates approximated the actual expenses of its employees. That evidence, in conjunction with other evidence offered by American, creates a genuine question of material fact on the per diem issue. We therefore reverse the Court of Federal Claims' grant of summary judgment and remand for further findings of fact on whether American "reasonably expected" the amounts that it paid to its flight crew employees in per diems to be incurred.

### *Working Condition Fringe*

Pursuant to I.R.C. § 132(a)(3), working condition fringe benefits are excluded from gross income, and, therefore, also from wages. A "working condition fringe" is "any property or services provided to an employee of the employer to the extent that, if the employee paid for such property or services, such payment would be allowable as a deduction under section 162 or 167." I.R.C. § 132(d). Section 162(a) allows, among other things, "a deduction [for] all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including ... (2) traveling expenses (including amounts expended for meals ... ) while away from home in the pursuit of a trade or business." However, no deduction is allowed under § 162 for any travel expense "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel ..., (C) the business purpose of the expense...." I.R.C. § 274(d). Alternatively, the taxpayer must demonstrate that it reasonably believed that its employees were keeping such records. *See* I.R.C. §§ 3401(a)(20), 3121(a)(20); *Jeppsen v.*

*Commissioner*, 128 F.3d 1410, 1418 (10th Cir.1997) (applying an objective standard).

In the instant case, American argues that although it did not require its flight crew employees (the "taxpayers" for purposes of I.R.C. §§ 162 and 274(d)) to submit expense reports, it was nevertheless reasonable for American to believe that these employees were themselves retaining receipts to substantiate their overnight travel expenses, because the employees would need to retain expense records for reimbursement of any amount exceeding the $36 per day per diem allowance. Further, American contends that it had a reasonable basis for its belief because during collective bargaining sessions, the pilots' negotiating committee would occasionally bring in detailed records of what an unspecified number of pilots had spent on trips that they had flown during the negotiations.

■ On review of the record before this court, we cannot say that the Court of Federal Claims erred in ruling that American had failed to proffer sufficient evidence to indicate that its employees were keeping substantiated records on a regular basis. Therefore, it was not objectively reasonable for American to believe that its employees were meeting the substantiation requirements of § 274(d).

■ American argues that even if it cannot meet the substantiation requirements of § 274(d), American's covered meals and incidental expenses allowance of $36 per day fall in the middle range of the $14 meals-only safe harbor of Rev. Rul. 84–164 and the $44 full per diem safe harbor of Rev. Rul. 80–62 1980–1 C.B. 63, and, therefore, American's $36 per diem allowance should be deemed substantiated for § 274 purposes. We agree with the Government that American's reasoning is flawed because it ignores the fact that the deemed substantiated limit under Rev. Rul. 80–62 includes lodging, which accounts for a greater portion of an employee's daily expenses. Further, under American's logic, $22 of this amount would include incidental expenses, and the burden is upon American to prove that such an amount would meet the "ordinary and necessary" requirement of I.R.C. § 162.

■ We also agree with the Government that American cannot rely on Rev. Rul. 69–592 to exclude per diem payments for turnaround trips because this Revenue Ruling applies on an employee-by-employee basis, and American made no effort to apply the rule to employees individually. American argues that Rev. Rul. 69–592 cannot fairly be read as excluding use of company-wide averages. We disagree. The ruling plainly is directed to consideration of employee circumstances on an individual basis. *See id.* ("Advice has been requested whether an employer must withhold Federal income tax on amounts paid to his employee as reimbursements for meals on business trips away from home that do not require the employee to stop for sleep or rest.").

Further, we find that there was adequate notice from the relevant statutes and regulations in effect at the time of the per diem payments, to allow an employer to reasonably suspect that a withholding obligation existed. *See e.g., Central Illinois Pub. Serv.*, 435 U.S. at 31–32, 98 S.Ct. 917 (stating that the relevant statutes, regulations and IRS pronouncements in effect at the relevant time are sufficient to give the employer precise notice of his obligation to withhold).

### American Express Vouchers

Pursuant to I.R.C. § 132(a)(4), "*de minimis*" fringe benefits are excluded from gross income, and, therefore, also from wages. A *de minimis* fringe is "any property or service the value of which is (after taking into account the frequency with which similar fringes are provided by the employer to the employer's employees) so small as to make accounting for it unreasonable or administratively impracticable." I.R.C. § 132(e)(1).

American argues that its vouchers fall squarely within the definition of a *de minimis* fringe benefit. American contends that because the vouchers did not contain the recipient employees' names, it was impossible for American to determine which employees used their vouchers. American also argues that while it may have been possible for American to create a system for tracking the employees' use of these vouchers for employment tax withholding purposes, to do so "would have been unreasonable and administratively impractical in light of the low value and infrequency of distribution." The Government argues, and the Court of Federal Claims held, that American did not establish that it would have been administratively impractical to account for the vouchers.

 While American is not required to present its entire case in response to the Government's motion for summary judgment, American must present sufficient evidence to show an evidentiary conflict exists as to whether it would have been unreasonable or administratively impracticable to account for the vouchers. *See Armco,* 791 F.2d at 149, 229 USPQ at 722. On review of the record before us, American has not offered evidentiary support for its assertion of administrative impracticability. *See Anderson,* 477 U.S. at 257, 106 S.Ct. 2505 (stating "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."). American's arguments alone are not affirmative evidence to defeat the Government's motion. *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.,* 45 F.3d 1550, 1562, 33 USPQ2d 1496, 1504 (Fed.Cir.1995) ("There must be sufficient substance, other than attorney

argument, to show that the issue requires trial.").

In addition, American argues that its voucher program did not constitute a cash equivalent benefit and that if it is now held to have been one, American should not be held liable to pay employment taxes on the vouchers because its duty to withhold taxes was speculative and not precise. In making the latter argument, American relies on *Central Illinois Public Service Co.,* 435 U.S. at 31, 98 S.Ct. 917 ("Because the employer is in a secondary position as to liability for any tax of the employee, it is a matter of obvious concern that, absent further specific congressional action, the employer's obligation to withhold be precise and not speculative."). As noted above, the Court of Federal Claims relied on Treas. Reg. 1.132–6T(c), in concluding that the vouchers did not qualify as *de minimis* fringe benefits because it was not *unreasonable or administratively impractical* to account for the "cash" or "cash equivalent" benefits which they conferred.[7] Treas. Reg. 1.132–6T, was issued on December 23, 1985, approximately six months after American's vouchers were distributed, but prior to the expiration of the vouchers in December 1985.

 We hold that even in the absence of Treas. Reg. 1.132–6T, the vouchers constituted a cash equivalent benefit. The vouchers were blank American Express charge forms, bearing American's account number, and in an amount "not to exceed $50." The vouchers did not contain the employee's name or any transfer restrictions. Further, although the letter accompanying the vouchers stated that they were only good at restaurants, there was some evidence that they could be used at non-restaurant business establishments.[8]

---

7. According to Treas. Reg. 1.132–6T(c), "Unless excluded by a statutory provision other than section 132(a)(4), the value of any fringe benefit that would not be unreasonable or administratively impracticable to account for must be included in the employee's gross income. Thus, except as otherwise provided in this section, the provision of any cash fringe

benefit (or any fringe benefit provided to an employee through the use of a charge or credit card) is not excludable as a de minimis fringe."

8. There were no restrictions on the face or back of the vouchers limiting their use to restaurants.

Even if the vouchers were only valid at restaurants, however, they would still be cash equivalents given the lack of restrictions on their use and transferability. According to one of American's witnesses, the vouchers were essentially bearer paper.

We also find that American's reliance on *Central Illinois* is without merit because American did have sufficient notice of its obligation to withhold and pay employment taxes on the vouchers. First, I.R.C. § 132(e)(1) expressly provides that a fringe benefit does not qualify as a *de minimis* fringe unless accounting for the benefit would be unreasonable or administratively impractical. Second, the guidance in Treas. Reg. § 1.132–6T(c) was available in December of the tax year, prior to the expiration of American's vouchers. Therefore, we hold that the Court of Federal Claims properly granted summary judgment to the Government with regard to the vouchers.

*Conclusion*

For the reasons given above, the judgment of the Court of Federal claims is

*AFFIRMED–IN–PART, REVERSED–IN–PART,* and *REMANDED.*

Costs

Each party to bear its own costs.