117 T.C. No. 2


UNITED STATES TAX COURT


UAL CORPORATION AND SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18573-98.            Filed July 13, 2001.


     U, an international airline, paid its pilots and
flight attendants (collectively, employees) per diem
allowances.  U paid the allowances to all employees;
i.e., those who departed from and returned to their
home bases on the same day and those who departed from
and returned to their home bases on different days.  U
neither required nor received substantiation from the
employees as to their uses of the allowances.
     <u>Held</u>:  U may deduct the per diem allowances as
personal service compensation under sec. 162(a)(1),
I.R.C.


     <u>George B. Javaras</u>, <u>Todd F. Maynes</u>, and <u>Natalie Hoyer Keller</u>,
for petitioner.

     <u>James C. Lanning</u>, for respondent.

LARO, Judge:  Respondent determined deficiencies of $1,478,718, $61,867,523, $1,751,161, and $45,981,293 in petitioner's 1983, 1984, 1986, and 1987 Federal income taxes, respectively.[1]  Following concessions, we must decide whether petitioner may deduct the per diem allowances paid to its flight attendants and pilots (collectively, employees) for day trips and overnight trips (as defined below).  We hold it may deduct the per diem allowances as personal service compensation under section 162(a)(1).[2]

## FINDINGS OF FACT

Most facts were stipulated.  The parties' stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference.  The stipulated facts are found accordingly.  Petitioner is a consolidated group of corporations that files a consolidated Federal income tax return on the basis of the calendar year.  Its principal office was in Elk Grove Township, Illinois, when its petition was filed.  United Air Lines, Inc. (United), is an airline that provides passenger and

---

[1] Respondent has determined no deficiency for 1985 because the limitations period was closed when the underlying notice of deficiency was issued.  We discuss 1985 because petitioner's deduction of the per diem allowances for that year affects petitioner's tax liability for the subject years.

[2] Section references are to the Internal Revenue Code in effect for the subject years.  Rule references are to the Tax Court Rules of Practice and Procedure.

cargo service worldwide.  United was petitioner's subsidiary during 1985, 1986, and 1987.

During the subject years, United employed approximately 12,000 flight attendants and 6,150 pilots.  Each of the employees was assigned to a series of flights (pairings) that typically originated and terminated at the home base of one or more of the employees assigned to the pairing.  Most of the pairings required that the employees spend one or more nights away from their home bases (overnight trips).  The other pairings brought the employees back to their home bases on the day of departure (day trips).

United paid the employees compensation and benefits pursuant to collective bargaining agreements (union contracts) which it had entered into with the employees' respective unions.  Under the union contracts, United paid the employees regular compensation plus a per diem allowance.  United paid each flight attendant a per diem allowance equal to $1.50 times the number of hours that he or she was on duty or on flight assignment.  United initially paid the same per diem allowance to each pilot but increased the pilots' per diem rate from $1.50 per hour to $1.55 per hour effective April 1, 1986.  Neither United nor petitioner required that the employees substantiate their use of the per diem allowances, and neither United nor petitioner has any

written substantiation as to the employees' actual use of the per diem allowances.

United's computerized system allowed it to record accurately the employees' duty assignments. United used these records to calculate each employee's per diem allowance. United included its payment of an employee's per diem allowance in his or her salary check and listed the amount of the per diem allowance included in the check on the corresponding check stub. United issued to each employee a monthly report of the per diem allowances which it had paid to him or her.

On its 1985, 1986, and 1987 Federal income tax returns, petitioner claimed under section 162(a)(2) that it could deduct the per diem allowances as employee travel expenses. For 1985, United paid the employees per diem allowances totaling $35,532,698 for overnight trips and $1,867,757 for day trips. For 1986, United paid the employees per diem allowances totaling $53,867,516 for overnight trips and $2,635,763 for day trips. For 1987, United paid the employees per diem allowances totaling $59,777,494 for overnight trips and $2,918,385 for day trips. As to 1987, petitioner took into account section 274(n), as amended in 1986, and deducted only 80 percent of the per diem allowances paid during 1987. For financial accounting purposes, petitioner also reported its payment of the per diem allowances as a travel expense.

United did not withhold Federal income tax on its payment of the per diem allowances, and it neither withheld nor paid Federal Insurance Contribution Act (FICA) tax with respect to the per diem allowances. United did not report the per diem allowances as wages or nonwage compensation on the employees' Forms W-2, Wage and Tax Statement.

OPINION

We must decide whether petitioner may deduct the per diem allowances paid to the employees. Petitioner argues it may deduct the per diem allowances as personal service compensation because they arose out of an employer/employee relationship. Respondent argues that petitioner may not deduct the per diem allowances as personal service compensation because it lacked the requisite compensatory intent at the time of payment. We agree with petitioner.

Our inquiry begins with the relevant text. Section 162(a) lets a taxpayer deduct all ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business. Section 162(a)(1) includes within the ambit of section 162(a) "a reasonable allowance for salaries or other compensation for personal services actually rendered". Payments are deductible under section 162(a)(1) to the extent they are "reasonable and * * * in fact payments purely for services." Sec. 1.162-7(a), Income Tax Regs.

The parties agree that the per diem allowances, if paid for services, would not make any of the employees' total compensation unreasonable. Thus, we limit our focus to the second requirement. Under that requirement, a deduction under section 162(a)(1) turns on the factual determination of whether the facts and circumstances of the case establish that the payor made the payment to the payee for services rendered. Sec. 1.162-7(a), Income Tax Regs. Whether the payor makes the payment to the payee intending to compensate him or her for services rendered is a pertinent factor to consider. See, e.g., Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1058-1059 (1972), and the cases cited therein, affd. without published opinion 474 F.2d 1345 (5th Cir. 1973).

We conclude that United paid the per diem allowances to the employees for services rendered. We reach that conclusion from the certainty that United would not have paid the per diem allowances to the employees but for: (1) The bona fide employer/employee relationship and (2) the need to pay those allowances in order to secure the employees' services. The presence of such a bona fide employment relationship and such a need to pay per diem allowances in order to secure personal services is enough under the facts at hand to persuade us that United paid the per diem allowances to the employees for their services. Accord Kowalski v. Commissioner, 65 T.C. 44, 52

(1975), revd. 544 F.2d 686 (3d Cir. 1976), revd. 434 U.S. 77 (1977), where we stated: "Even though we have found that the meal allowance was not intended as additional compensation, it was obviously compensatory to a trooper to the extent it paid for food which he otherwise would have had to pay for from some other source."[3]  We also bear in mind, and find as a fact, that United paid the per diem allowances to the employees intending to compensate them for their personal services.

Respondent places undue emphasis on the fact that the union contracts do not specifically characterize the per diem allowances as personal service compensation.  Such a characterization by the parties to the contracts is not dispositive as to the characterization of the per diem allowances for Federal income tax purposes.  See Hosp. Corp. of Am. v. Commissioner, T.C. Memo. 1996-559.  Nor is it dispositive that United reported the per diem allowances as travel expenses for both tax and financial accounting purposes.  The bona fide employer/employee relationship that United had with the employees, coupled with their negotiations as to the specifics of the employees' compensation package, specifics which included the payment of per diem allowances, speaks loudly towards a proper

---

[3] Moreover, as the Supreme Court noted in upholding our decision in that case, the meal allowance given to Kowalski by way of the cash payments was of a "presumptively compensatory nature".  Kowalski v. Commissioner, 434 U.S. 77, 94 (1977).

characterization of those allowances as personal service compensation. We adopt that characterization.

We conclude by noting that the parties are currently litigating in the United States Court of Federal Claims the issue of whether the very same per diem allowances are wages for employment tax purposes. See United Air Lines, Inc. v. United States, No. 97-173T (Fed. Cl., filed Mar. 18, 1997). Interestingly, the Government is arguing that those allowances are wages for employment tax purposes. Wages for employment tax purposes are "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash". Sec. 3121(a). Section 3401 defines wages in similar terms.

We hold that United may deduct the per diem allowances under section 162(a)(1) as personal service compensation. Accordingly,

Decision will be entered

under Rule 155.

Reviewed by the Court.

WELLS, CHABOT, GERBER, RUWE, HALPERN, FOLEY, VASQUEZ, and GALE, JJ., agree with this majority opinion.

WHALEN, J., concurs.

RUWE, J., concurring:  I agree with the result in this case. However, I believe it is appropriate to elaborate on why the per diem allowances for day trips and overnight trips are both deductible as compensation under section 162(a)(1).

United paid its employees per diem allowances at a rate of $1.50 per hour ($1.55 for pilots for certain portions of the years in issue) for the number of hours on duty or on flight assignment.  United appears to have arrived at this number by estimating the expenses that would be incurred by an employee for one day, $36 ($37.20 for pilots for certain portions of the years in issue), and then dividing this number by 24 hours.  The expert report relied upon by petitioner attributes most of the per diem allowance to meal expenses.  See infra p. 21.  The employees were not required to substantiate their use of the per diem allowances, and neither United nor petitioner has any written substantiation as to the employees' actual use of the per diem allowances.

1.  Day Trips

The per diem allowance for day trips was to cover meal expenses that the employees might incur during day trips.[1]  Meal

_____

[1]In his dissenting opinion, see infra p. 38 note 3, Judge Swift states that the day trip per diem allowances included amounts for incidental travel expenses.  The facts provide no basis upon which to apportion any amount of the day trip per diem allowances to incidental travel expenses, and it is very unlikely
(continued...)

expenditures for nonovernight day trips are personal expenses of the employees, rather than business travel expenses.  United States v. Correll, 389 U.S. 299 (1967).[2]  It therefore appears that United intended to pay the allowances to its employees to cover their personal expenses incurred during day trips.  In Commissioner v. Kowalski, 434 U.S. 77 (1977), the Supreme Court held that cash meal payments to an employee were includable in the employee's gross income.  The Supreme Court noted "the presumptively compensatory nature of cash payments".  Id. at 94; see Bank of Stockton v. Commissioner, T.C. Memo. 1977-24 (indicating that if payments made to enable employees' wives to attend conventions were not deductible as either noncompensatory business expenses or dividends, then the only reasonable conclusion would be that the payments were in the nature of additional compensation to the employees and, unless unreasonable in amount, would be deductible as compensation); Anchor Natl. Life Ins. Co. v. Commissioner, 93 T.C. 382, 433 and n.30 (1989)

---

[1](...continued)
that the type of incidental expenses that were contemplated in structuring the per diem allowances were incurred on day trips. See infra p. 21.

[2]Based on United States v. Correll, 389 U.S. 299 (1967), petitioner has conceded that the day trip allowances were not for travel expenses because its employees' day trip expenses were not incurred during overnight travel.  Both parties now agree that the only issue regarding day trip allowances is whether they constitute compensation to United's employees.

(citing <u>Bank of Stockton v. Commissioner</u>, <u>supra</u>, for the
proposition that disallowed business expenses may be deductible
as additional compensation to employees if the compensation does
not exceed the bounds of reasonableness).  In the instant case,
the per diem allowances for day trips were for personal expenses
of United's employees and should be treated as compensation to
the employees.[3]

Respondent argues that United did not have the requisite
compensatory intent at the time it paid the allowances.  However,

---

[3]Although not in effect for the years in issue, sec. 1.62-
2(j), <u>Example</u> (<u>2</u>), Income Tax Regs., confirms this as the proper
treatment.  In his dissenting opinion, see <u>infra</u> p. 38 note 3,
Judge Swift erroneously cites sec. 262 and <u>United States v.
Correll</u>, <u>supra</u>, to support his belief that United's allowance for
its employees' day trip meal expenses is nondeductible because
such payments were for personal living expenses of United's
employees.  However, sec. 262 only disallows the personal
expenses of the "taxpayer".  Sec. 1.262-1, Income Tax Regs.
Here, UAL is the "taxpayer".  The day trip meal expenses were
"personal expenses" of its employees, not personal expenses of
United.  The "taxpayer" in <u>United States v. Correll</u>, <u>supra</u>, was
not a corporation or an employer, but was an individual taxpayer
who was attempting to deduct his own personal expenditures for
meals during nonovernight travel.  The Supreme Court was not
faced with, nor did it discuss, the issue of whether an
employer's payment of its employees' personal expenses could be
deducted by the employer.  On the other hand, in <u>Ginsburg v.
Commissioner</u>, T.C. Memo. 1994-272, Judge Swift himself recognized
that payment of an individual's personal expenses by a
corporation can be deducted by the corporation if the payment is
in the nature of compensation.  See <u>Fred W. Amend Co. v.
Commissioner</u>, 55 T.C. 320, 327-328 (1970), affd. 454 F.2d 399
(7th Cir. 1971).

the relevant statute[4] and regulations[5] do not require an "intent to compensate" as a prerequisite to deductibility under section 162(a)(1). Although an "intent to compensate" requirement has been applied by the courts in numerous cases, the instant situation is factually distinguishable from the situation in those cases which involved corporate payments to shareholders or employees in positions of control. E.g., Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1058-1059 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973). In the context of corporate payments to shareholders, careful scrutiny is required to determine whether the alleged compensation is in fact a disguised dividend. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1324 (5th Cir. 1987), affg. T.C. Memo. 1985-267; Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1156 (1980).[6] If a corporate payment to a shareholder/employee is

_____

[4]Sec. 162(a)(1) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, including "a reasonable allowance for salaries or other compensation for personal services actually rendered".

[5]"The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services." Sec. 1.162-7(a), Income Tax Regs.

[6]In Elliotts, Inc. v. Commissioner, 716 F.2d 1241 (9th Cir. 1983), revg. and remanding T.C. Memo. 1980-282, the Court of Appeals for the Ninth Circuit discussed the problem of determining whether purported compensation payments are in fact disguised dividends. The Court of Appeals noted that the test
(continued...)

characterized as additional compensation, then the corporate taxpayer is allowed a deduction.  If the payment is characterized as a dividend, no deduction is allowed.  Thus, a corporate taxpayer has an incentive to make purported compensation payments which are in fact disguised dividends.  As the majority opinion correctly states, the payor's intent is simply a pertinent factor to consider, not a prerequisite to deductibility.[7]

---

[6](...continued)
for deductibility under sec. 162(a)(1) is a two-prong test requiring (1) that amount of compensation must be reasonable, and (2) the payments must in fact be purely for services.  <u>Id.</u> at 1243.  The Court of Appeals then made the following observation:

> The existence of a compensatory purpose can often be inferred if the amount of the compensation is determined to be reasonable under the first prong.  For these reasons, courts generally concentrate on the first prong--whether the amount of the purported compensation is reasonable.  Courts have generally not delved into whether a compensatory purpose exists under the second prong except in those rare cases where the Commissioner has come forward with evidence that purported compensation payments, although reasonable in amount, were in fact disguised dividends.  By and large, the inquiry under section 162(a)(1) has turned on whether the amounts of the purported compensation payments were reasonable.
> *       *       *       *       *       *       *
> In the rare case where there is evidence that an otherwise reasonable compensation payment contains a disguised dividend, the inquiry may expand into compensatory intent apart from reasonableness. * * * [<u>Id.</u> at 1243-1244; citations and fn. refs. omitted.]

[7]In <u>Kowalski v. Commissioner</u>, 65 T.C. 44 (1975), revd. 544 F.2d 686 (3d Cir. 1976), revd. 434 U.S. 77 (1977), a Court-reviewed opinion, this Court stated:

(continued...)

The Court of Federal Claims and the Court of Appeals for the Federal Circuit have considered similar per diem allowances, albeit in the context of the employment tax regime.  Am. Airlines, Inc. v. United States, 40 Fed. Cl. 712 (1998), affd. in part, revd. in part, and remanded 204 F.3d 1103 (Fed. Cir. 2000); Am. Airlines, Inc. v. United States, 204 F.3d 1103 (Fed. Cir. 2000).  In its opinion, the Court of Federal Claims found that the portion of the per diem allowance attributable to meal expenses was the equivalent of a wage concession in the context of a labor negotiation.  Am. Airlines, Inc. v. United States, 40 Fed. Cl. at 721.[8]  The court noted:

> The evidence that American's per diem rates were driven by competitiveness with other airlines is not helpful to plaintiff, as it is equally consistent with a different motivation than compensating for employees' actual expected travel expenses, to wit, keeping up with its competitors' wage and benefit packages.
> * * *  [Id. at 720.]

---

[7](...continued)
Even though we have found that the meal allowance was not intended as additional compensation, it was obviously compensatory to a trooper to the extent it paid for food which he otherwise would have had to pay for from some other source. * * *  [Id. at 52.]

[8]"It would be naive to ignore that the 'meal expense' concession was tantamount to wage concessions in the context of a labor negotiation."  Am. Airlines, Inc. v. United States, 40 Fed. Cl. 712, 721 (1998), affd. in part, revd. in part, and remanded 204 F.3d 1103 (Fed. Cir. 2000).

The day trip allowances were compensation in the form of fringe benefits.[9]  Section 61(a)(1) provides that gross income includes "Compensation for services, <u>including</u> fees, commissions, <u>fringe benefits</u>, and similar items".  (Emphasis added.)  As applicable for the years 1985 through 1988, section 1.61-2T(a)(3), Temporary Income Tax Regs., 50 Fed. Reg. 52286 (Dec. 23, 1985), provides that "A fringe benefit provided in connection with the performance of services shall be considered to have been provided as <u>compensation for services</u>."  (Emphasis added.)

The regulations applicable to the years in issue recognize that employer-provided meals or meal allowances are taxable fringe benefits unless specifically excluded from income under section 132.[10]  Section 1.132-6T, Temporary Income Tax Regs., 50 Fed. Reg. 52308 (Dec. 23, 1985), recognizes that meals or meal allowances to employees (for meals not otherwise deductible under section 162(a)(2)) are generally considered to be taxable income

---

[9]The Court of Federal Claims and the Court of Appeals for the Federal Circuit considered similar per diem allowances within the framework of fringe benefits.  <u>Am. Airlines, Inc. v. United States</u>, 40 Fed. Cl. at 722; <u>Am. Airlines, Inc. v. United States</u>, 204 F.3d at 1110.

[10]For the years in issue, sec. 132 excluded the following fringe benefits from gross income:  (1) No-additional-cost service; (2) qualified employee discount; (3) working condition fringe; and (4) de minimis fringe.

unless specifically excluded as a de minimis fringe benefit.[11]

The temporary regulations provide:

> Thus, except as otherwise provided in this section, the provision of any cash fringe benefit (or any fringe benefit provided to an employee through the use of a charge or credit card) is not excludable as a de minimis fringe. For example, the provision of cash to an employee for personal entertainment is not excludable as a de minimis fringe. [Sec. 1.132-6T(c), Temporary Income Tax Regs., supra.]

The allowance of a deduction for day trip allowances would not undercut the strict substantiation requirements of section 274(d). Section 274 generally disallows certain entertainment, gift, and travel expenses. In the case of allowances paid to cover expenses incurred during travel, section 274 applies only if the amount is otherwise deductible as a "travel" expense. Thus, section 1.274-1, Income Tax Regs., provides that "If a deduction is claimed for an expenditure for entertainment, gifts, or travel, the taxpayer must first establish that it is otherwise allowable as a deduction under chapter 1 of the Code before the provisions of section 274 become applicable."[12] Since any meal

_____

[11]Logic dictates that in order for meal money to be excluded from gross income as a "de minimis fringe benefit", meal money provided to employees must be a "fringe benefit".

[12]See sec. 1.274-5(e), Income Tax Regs. (the term "business expenses" includes ordinary and necessary expenses for travel, but does not include personal expenses, and advances, reimbursements, or allowances for personal expenses must be reported as income by the employee); sec. 1.274-5T(f)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46027-46028 (Nov. 6,

(continued...)

expenditures by employees during day trips would not be deductible by the employees as travel expenses, United States v. Correll, 389 U.S. at 299, section 274(d) has no application.[13]

2.  Overnight Trips

The holding that the per diem allowances for overnight trips are deductible as compensation under section 162(a)(1) is consistent with the characterization of the day trip allowances. However, it is necessary to provide additional explanation for why the allowances for overnight trips are not "travel" expenses as to petitioner.

Section 61(a)(1) provides that compensation for services, including fringe benefits, is included in gross income. Section 62(a), which allows an employee a deduction for expenses incurred

---

[12](...continued)
1985) (same).

[13]Note also that the regulations under sec. 274 regarding substantiation refer only to travel away from home. Sec. 1.274-5(a)(1) and (b)(2), Income Tax Regs.; sec. 1.274-5T(a)(1) and (b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Thus, this Court declined to apply sec. 274(d) to a taxpayer's business use of his automobile which was purely local. Cobb v. Commissioner, 77 T.C. 1096, 1101 (1981), affd. without published opinion 680 F.2d 1388 (5th Cir. 1982); Gestrich v. Commissioner, 74 T.C. 525, 530-531 (1980), affd. without published opinion 681 F.2d 805 (3d Cir. 1982). Sec. 274(d) was subsequently amended for taxable years after Dec. 31, 1985, to provide that no deduction shall be allowed for listed property, which includes any passenger automobile, unless strict substantiation requirements are met.

in his employment in computing adjusted gross income, provides,
in pertinent part:

> the term "adjusted gross income" means * * * gross
> income minus the following deductions:
>
> > *    *    *    *    *    *    *
>
> > (2)  Certain trade and business deductions of
> > employees.--
> >
> > > (A)  Reimbursed expenses of employees.--
> > > The deductions allowed by part VI (section
> > > 161 and following) which consist of expenses
> > > paid or incurred by the taxpayer, in
> > > connection with the performance by him of
> > > services as an employee, under a
> > > reimbursement or other expense allowance
> > > arrangement with his employer.

However, pursuant to the regulations, if an employee is paid
under a reimbursement or expense allowance agreement and makes an
"adequate accounting" to the employer, then the employee is not
required to report the allowance in income.  Sec. 1.274-5(e)(2),
Income Tax Regs; sec. 1.274-5T(f)(2), Temporary Income Tax Regs.,
50 Fed. Reg. 46028 (Nov. 6, 1985).  An employee could meet the
adequate accounting requirement if the allowance is fully
substantiated by the employee to the employer.  Sec. 1.274-
5(e)(4), Income Tax Regs.; sec. 1.274-5T(f)(4), Temporary Income
Tax Regs., 50 Fed. Reg. 46029 (Nov. 6, 1985).   Alternatively,
the employee could meet the adequate accounting requirement if
the per diem allowance fell under either Rev. Rul. 80-62, 1980-1
C.B. 63, or Rev. Rul. 84-164, 1984-2 C.B. 63, because the

allowances would be deemed substantiated up to the amounts set forth in those rulings. Sec. 1.274-5(f), Income Tax Regs.; sec. 1.274-5T(g), Temporary Income Tax Regs., 50 Fed. Reg. 46030-46031 (Nov. 6, 1985). If the total allowance received exceeded the amount of deductible expenses incurred by the employee, then the excess would have to be reported as income on the employee's tax return. Sec. 1.274-5(f), Income Tax Regs.; sec. 1.274-5T(g), Temporary Income Tax Regs., supra.

For the years in issue, Rev. Rul. 80-62, supra, treated $44 per day as substantiated for purposes of section 274(d) while Rev. Rul. 84-164, supra, treated $14 per day as substantiated for purposes of section 274(d). The determination of which ruling applies depends on what expenses the per diem allowances are intended to cover. A plain reading of Rev. Rul. 84-164, supra, indicates that it applies when an allowance arrangement is exclusively for meals. On the other hand, in Murphy v. Commissioner, T.C. Memo. 1993-292, we held that Rev. Rul. 80-62, supra, applied where an allowance arrangement was designed to cover both meals and incidental expenses.

Respondent argues that Murphy v. Commissioner, supra, was incorrectly decided.[14] Respondent argues that Rev. Rul. 80-62,

_____

[14]The parties agree that the issue of the appropriate ruling to apply is limited to per diem allowances paid before Jan. 1, 1989. Rev. Proc. 89-67, 1989-2 C.B. 795 (construing Rev. Rul.
(continued...)

supra, applies only where the reimbursement includes an amount for lodging expense, and that Rev. Rul. 84-164, supra, applies to situations involving meals and incidental expenses, but not lodging.  However, Rev. Rul. 80-62, supra, does not require a lodging expense and by its specific terms, Rev. Rul. 84-164, supra, limits its applicability to allowances for meals only and deems $14 as the amount substantiated.

In analyzing the expenses which the revenue rulings are designed to cover, a logical disconnect surfaces.  Under a plain reading of the two rulings, combined with our decision in Murphy v. Commissioner, supra, the difference between the amount that can be deemed substantiated under each ruling, $30, can be attributed solely to incidental expenses.  However, Rev. Rul. 80-62, 1980-1 C.B. at 64, also requires that "the employer reasonably limits payment of such travel expenses to those that are ordinary and necessary in the conduct of the trade or business".  Assuming the revenue rulings are consistent in terms of the amount applicable to meals under each ruling, it seems logical that $14 of the allowance petitioner paid would constitute the amount that the rulings accept as reasonable for meal expenses.  This being so, petitioner would bear the burden of proving that the additional amount of the allowance for

---

[14](...continued)
84-164, 1984-2 C.B. 63, to cover meals and incidental expenses).

overnight trips ($23.20 for pilots, $22 for other employees)[15] was reasonable as required by Rev. Rul. 80-62, supra. Am. Airlines, Inc. v. United States, 204 F.3d at 1111.

The evidence in the record indicates that the per diem allowances for overnight trips (excluding meals) were for tips for waiters, baggage handlers and drivers, transportation between hotels and restaurants, telephone calls, personal laundry, newspapers, and shoeshines.[16] Petitioner relied on an expert report which it claims shows that the amount of the allowances was a reasonably accurate estimate of actual travel costs incurred by the employees. Petitioner presented evidence that, of the maximum $36 allowance ($37.20 for pilots for certain portions of the years in issue) for overnight trips, between $4 and $7 was for incidental expenses. Thus, the reasonableness of the amount of the per diem allowance for overnight trips was based mostly on amounts attributable to the costs of meals. The problem in the instant case is that Rev. Rul. 84-164, supra,

---

[15]Petitioner paid a per diem allowance of $1.50 per hour ($1.55 per hour for pilots for certain portions of the years in issue) to its employees. The maximum allowance an employee was entitled to for one 24-hour period was $36 ($37.20 for pilots for certain portions of the years in issue). Subtracting $14 from this maximum allowance for 1 day to account for meal expenses leaves $22 ($23.20 for pilots for certain portions of the years in issue) which would not be attributable to meals.

[16]Petitioner either directly paid, provided, or reimbursed employees for costs of lodging, ground transportation between airports and hotels, parking, and cleaning uniforms.

deems $14 substantiated for purposes of meals, while a much greater amount of the per diem allowance in the instant case was based on meals and only a small fraction of the overall allowance was attributable to incidental expenses.

On the basis of these facts, how could United's payment of $36, or $37.20, be reasonable when Rev. Rul. 84-164, supra, treats meals as substantiated only to the extent of $14 and petitioner's own expert report attributed, at most, between $4 and $7 to incidental expenses?  Allowing petitioner to deduct the full allowance under the authority of Rev. Rul. 80-62, supra, in these circumstances conflicts with the overall function of the deemed substantiation methods.  In Am. Airlines, Inc. v. United States, 204 F.3d at 1111, the Court of Appeals for the Federal Circuit commented on this conflict:

> American argues that even if it cannot meet the substantiation requirements of § 274(d), American's covered meals and incidental expenses allowance of $36 per day fall in the middle range of the $14 meals-only safe harbor of Rev. Rul. 84-164 and the $44 full per diem safe harbor of Rev. Rul. 80-62 1980-1 C.B. 63, and, therefore, American's $36 per diem allowance should be deemed substantiated for § 274 purposes.  We agree with the Government that American's reasoning is flawed because it ignores the fact that the deemed substantiated limit under Rev. Rul. 80-62 includes lodging, which accounts for a greater portion of an employee's daily expenses.  Further, under American's logic, $22 of this amount would include incidental expenses, and the burden is upon American to prove that such an amount would meet the "ordinary and necessary" requirement of I.R.C. § 162.

The facts at hand present a challenging question because petitioner does not fit within either of the revenue rulings. Respondent recognizes the potential discontinuity of coverage between the two rulings and suggests that the resolution should be that there is no revenue ruling explicitly in force which covers the instant case. In my opinion, the inapplicability of Rev. Rul. 84-164, 1984-2 C.B. 63, as recognized in Murphy v. Commissioner, supra, combined with petitioner's failure to prove entitlement to the deemed substantiation amount in Rev. Rul. 80-62, 1980-1 C.B. 63, precludes the applicability of either ruling. It follows that the allowances are not deductible by petitioner as "travel" expenses.

The issue thus becomes whether petitioner is entitled to deduct the per diem allowances as compensation. In this regard, respondent's sole argument is that petitioner is not entitled to a deduction under section 162(a)(1) because United did not intend to compensate its employees for personal services rendered when it paid the employees per diem allowances. However, as noted earlier, intent is a pertinent factor to consider, not a prerequisite to deductibility under section 162(a)(1). As explained previously, if the amounts paid to the employees cannot be treated as travel expenses by petitioner, they should be treated as compensation to the employees. In addition, the trial judge has found that United paid the per diem allowances to the

employees intending to compensate them for their personal services.[17]

Finally, respondent urges this Court to exercise its discretion to hold petitioner to a "duty of consistency" and not allow it to recharacterize the allowances as compensation. In LeFever v. Commissioner, 103 T.C. 525, 541 (1994), affd. 100 F.3d 778 (10th Cir. 1996), this Court addressed the equitable doctrine of the duty of consistency:

> The "duty of consistency" is based on the theory that the taxpayer owes the Commissioner the duty to be consistent with his tax treatment of items and will not be permitted to benefit from his own prior error or omission. The duty of consistency doctrine prevents a taxpayer from taking one position one year and a contrary position in a later year after the limitations period has run on the first year. [Citations omitted.][18]

---

[17]It should be noted that the relevant statutes and regulations have been clarified since the years in issue with respect to the tax treatment of per diem allowances. Under current law, per diem allowances are paid under either an "accountable" plan or a "nonaccountable" plan, and the tax consequences differ depending on which plan the allowances are paid under. For discussions of accountable and nonaccountable plans, see Trucks, Inc. v. United States, 234 F.3d 1340 (11th Cir. 2000), Brenner v. Commissioner, T.C. Memo. 2001-127, and United States v. Armstrong, 974 F. Supp. 528 (E.D. Va. 1997).

[18]See Hughes & Luce, L.L.P. v. Commissioner, T.C. Memo. 1994-559, affd. on other grounds 70 F.3d 16 (5th Cir. 1995), wherein we outlined the following requirements for application of the duty of consistency:

> (1) The taxpayer made a representation or reported an item for Federal income tax purposes in one year, (2) the Commissioner acquiesced in or relied on that

(continued...)

In the instant case, the periods of limitation with respect to petitioner's income tax liability for 1986 and 1987[19] and employment tax liability for 1985, 1986, and 1987, are still open.  Respondent's concern is that, since the tax years for the individual employees are probably closed, the tax due on the employees' income will not be paid.  However, a remedy for that situation is to seek withholding tax from petitioner for the years in issue, a remedy which respondent is currently seeking in the Court of Federal Claims.  United Air Lines, Inc. v. United States, No. 97-173T (Fed. Cl., filed Mar. 18, 1997).  Petitioner is simply correcting its tax return to account for its initial erroneous treatment of the per diem allowances as "travel" expenses.[20]

---

[18](...continued)
representation or report for that year, and (3) the taxpayer attempts to change that representation or report in a subsequent year, after the period of limitations has expired with respect to the year of the representation or report, and the change is detrimental to the Commissioner. * * *  [Citations omitted.]

[19]The only issues in dispute in this case are the deductibility of the per diem allowances paid for 1985, 1986, and 1987, and the computational items resulting therefrom.  No deficiency was determined for the taxable year 1985 because the period of limitations for that year had expired at the time the notice of deficiency was issued.  However, the deductibility of expenses (including per diem allowances) for 1985 directly affects other tax items, such as net operating loss carrybacks and carryovers, for the remaining years in issue.

[20]Indeed, it appears that petitioner's claim that the
(continued...)

3.    Conclusion

The per diem allowances are not deductible by petitioner as travel expenses.  However, these allowances were required under the terms of the employment contract that petitioner negotiated with the union.  Petitioner had to pay the allowances in order to receive the services of its employees.  The amount of the per diem allowance paid to each individual employee was determined based on the number of hours he or she worked while on duty or on flight assignment and was directly tied to the quantity of services rendered.  The per diem payments were paid for services actually rendered by the employees and are deductible under section 162(a)(1).[21]

WELLS, CHABOT, GERBER, GALE, and MARVEL, JJ., agree with this concurring opinion.

---

[20](...continued)
allowances are deductible as compensation was predicated on respondent's determination that the allowances were "wages" for employment tax purposes.

[21]For purposes of this case, respondent has conceded that if the per diem allowances are deductible as compensation, then the percentage limitations of sec. 274(n) will not apply.

THORNTON, <u>J</u>. concurring:  The majority concludes that the per diem payments are deductible on the ground that the payments are compensatory in nature.  The majority does not address to what extent, if any, this case implicates statutory rules (i.e., sections 162(a)(2) and 274(d)(1)) affecting the deductibility of travel expenses.  Absent any clear indication to the contrary, the majority opinion might be construed as indulging a suppressed premise that the compensatory nature of the payments overrides or renders moot the operation of rules pertaining to travel expenses.[1]  To that extent, the majority opinion might be susceptible to criticism such as that registered by the dissenters.  It would not appear necessary or appropriate, however, to construe any implicit premises of the majority opinion so broadly, for on the facts of this case, it appears that the per diem payments do not in fact represent travel expenses.

The majority rightly concludes that the per diem payments were compensatory in nature.  The facts also support an

----

[1] Two possible bases for such a suppressed premise suggest themselves:  (1) That treatment as compensation under sec. 162(a)(1) trumps treatment as travel expenses under secs. 162(a)(2) and 274(d)(1)--a proposition that seems difficult to square with the statutory regime; or (2) that because the per diem payments are compensatory, ipso facto they are not travel expenses.  Without further explication, this latter proposition might be thought to exemplify a species of the so-called "masked man fallacy" ("I know who my father is; I do not know who the masked man is; <u>so</u>, my father is not the masked man."). Blackburn, Think:  A Compelling Introduction to Philosophy 30 (1999).

affirmative conclusion that these payments were not travel expenses. The pilots and flight attendants could use the per diem payments as they pleased, just as they could use their base salaries as they pleased. The per diem payments were not contingent on the employees' incurring or accounting for any travel expenses. Indeed, the per diem payments were in addition to amounts United provided its employees for practically all travel expenses except meals and incidentals.[2]

Rather than provide its employees meals and incidentals, United agreed, as part of a negotiated union contract, to pay them small hourly wage enhancements for all hours they were on duty or on flight assignment. The union contract refers to the wage enhancements as per diem payments. The nomenclature does not affect the reality, however, that the bargain struck was for additional compensation, not for meals, incidentals, or other travel expenses.

The fact that the per diem payments were computed by reference to time spent on duty or aboard the aircraft does not suggest that the per diem payments are travel expenses. Rather, it suggests the contrary. Hours on duty or on board an aircraft would appear to encompass substantially all the pilots' and flight attendants' hours on the job. Moreover, from United's

---

[2] The record reveals that in addition to providing its pilots and flight attendants per diem payments, United also provided them--either directly or through reimbursement--lodging, ground transportation between airports and hotels, and uniform laundering.

perspective, hours its employees spend in flight do not represent travel away from its place of business (i.e., the aircraft), any more than aviation fuel represents a cost of travel. After all, United's business is air transportation.

Consider the hypothetical case of a flight crew that goes on duty and boards one of United's aircraft only to sit on the tarmac for some hours (for any of the myriad reasons especially familiar to a traveling Court) without ever taking flight. Presumably, the pilots and flight attendants on this aircraft would be entitled to per diem payments based on the number of hours they were on duty, without having gone anywhere. Some of them might return home, if home were nearby; others might go to hotels. They might lay over variously for short times or long times, subsisting lavishly or meanly. But each of them would receive the predetermined per diem payment, based on the number of hours spent sitting on the tarmac. In this hypothetical case, it seems clear that the per diem payments are too indirectly related to any employee travel to be considered travel expenses. It would make no material difference to the analysis if the employees' hours on duty were airborne.

WELLS, CHABOT, GERBER, BEGHE, and MARVEL, <u>JJ</u>., agree with this concurring opinion.

CHIECHI, J., concurring in part and dissenting in part:  I concur in the majority's holding that the per diem allowances for day trips that United paid to its employees are deductible under section 162(a)(1).  I dissent from the majority's holding that the per diem allowances for overnight trips that United paid to its employees are deductible under section 162(a)(1).  I believe that the amounts of such per diem allowances for overnight trips claimed as deductions under section 162(a)(2) are deductible under that section.

SWIFT, J., dissenting:  This case involves claimed ordinary deductions in the range of $100 million and extensive arguments by the parties.  If it works (which I don't believe it does), the majority opinion is remarkable in its brevity.

Recharacterization of Per Diem Allowances
as Employee Compensation

The majority opinion suggests that respondent's characterization herein for corporate income tax purposes of United's per diem allowances is inconsistent with respondent's characterization of the per diem allowances in the pending employment tax litigation.  See majority op. p. 8.  I disagree.

As I understand respondent's positions, in both the income tax and the employment tax contexts, respondent is treating the per diem allowances as travel expenses.  Respondent simply takes the position, as a matter of law, that the income tax and the employment tax regimes are not necessarily in pari materia and that under those different tax regimes the day-trip per diem allowances and the excess of the overnight per diem allowances (i.e., the portion of the per diem allowances not substantiated) are nondeductible to United for corporate income tax purposes (because of United's failure to satisfy the substantiation requirements of section 274(d)) and are subject to employment tax liability (not because the unsubstantiated and excess travel per diem allowances actually constitute wage compensation to United's

employees but because the employment tax provisions treat unsubstantiated and excess per diem travel allowances as subject to employment taxes as if they were compensation). Any disagreement with that legal interpretation should be addressed on the merits, and the innuendo in the majority opinion of factual inconsistency on respondent's part in the characterization of per diem allowances is inappropriate.

The more significant concern with regard to "inconsistent" characterizations in this case should be with United's efforts to recharacterize entirely the per diem allowances that United, its employees, and the labor unions, for all other purposes, treated as employee travel expenses.[1] United now, years later, and solely for Federal income tax purposes, attempts to inconsistently treat such travel expenses as employee compensation, outside the scope of the substantiation requirements of section 274(d), and fully deductible under section 162(a)(1).

An extensive body of case law limits a taxpayer's ability to change the treatment of reported items of income and deductions. See, e.g., Norwest Corp. & Subs. v. Commissioner, 111 T.C. 105, 146-147 (1998); LeFever v. Commissioner, 103 T.C. 525, 541-545 (1994), affd. 100 F.3d 778 (10th Cir. 1996).

---

[1] The parties' stipulation of facts filed with the Court in this case repeatedly acknowledges United's specific treatment of the per diem allowances as travel expenses.

From the record herein, it appears that United and other airlines, not respondent, initially sought what some might regard as an additional inconsistency in the treatment of the per diem allowances. Respondent's audit of the per diem allowances within the airline industry began as employment tax audits of travel expenses. In the context of those employment tax audits (and while still contesting any employment tax adjustments and likely only as a protective measure against the possibility that the employment tax adjustments might be sustained), United and other airlines raised the issue via claims for refund as to the deductibility, for corporate income tax purposes, of the unsubstantiated and excess per diem allowances relating to the overnight trips and of the full per diem allowances relating to the day trips.

In the instant income tax controversy and in the majority opinion, it is simply not appropriate to comment negatively on respondent's position in the pending employment tax litigation with United.

As stated, the inconsistencies that we should be focusing on and addressing herein are the many factual inconsistencies between United's treatment of the per diem allowances as travel expenses for all purposes other than belatedly for its corporate Federal income tax purposes.

On its face, the majority opinion is inadequate to support a finding that the per diem allowances constituted employee compensation "for services rendered", as opposed to travel expenses. In its summary "Findings of Fact", see majority op. pp. 2-5 and also the Headnote, the majority opinion repeatedly describes the amounts in controversy as "per diem" related to employee "trips". Surely, "per diem" related to employee "trips" constitutes travel expenses. The majority's avoidance of the word "travel", when mentioning the per diem allowances, does not conceal the character of the per diem allowances as travel expenses.

No mention is made in the majority's Findings of Fact that the per diem allowances represent a payment "for services". In fact, in the majority's brief Findings of Fact, nothing is found, or even mentioned, as to the "purpose" or "intent" for which the per diem allowances were paid (other than "for" employee "trips").[2] Nothing about this opinion "speaks loudly", see

_____

[2] In analyzing whether an intent to compensate existed, we typically consider, among other factors: Whether there was corporate authorization for the payment of compensation; whether the books and records of the corporation reflected that the payments were treated as payments of compensation; whether the payments were reported to the recipients on Forms W-2, Wage and Tax Statement, as wage compensation; and whether the payments were treated as compensation on the employer's and employees' tax returns as filed. See, e.g., Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1059 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973); Elec. & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1338-1340 (1971), affd. without published opinion 496

(continued...)

majority op. p. 7, except perhaps its ultimate conclusion under which millions of dollars of United's travel expenses become fully deductible in spite of United's failure to satisfy the substantiation requirements of section 274(d), discussed below.

In Am. Airlines, Inc. v. United States, 204 F.3d 1103, 1108 (Fed. Cir. 2000), in connection with the ongoing employment tax dispute, the U.S. Court of Appeals for the Federal Circuit appears to have held that the travel expenses in issue (if, on remand, they are found to have been reasonably expected to be incurred by the airline employees) could not be recharacterized as wage compensation for employment tax withholding purposes. In this regard, the Court of Appeals for the Federal Circuit relied on and quoted both section 31.3121(a)-1(h) (regarding employment tax withholding) and section 31.3401(a)-1(b)(2) (regarding income tax withholding), Employment Tax Regs., which provide as follows:

§ 31.3121(a)-1(h): Amounts paid specifically-- either as advances or reimbursements--for traveling or other bona fide ordinary and necessary expenses incurred or reasonably expected to be incurred in the business of the employer are not wages. Traveling and other reimbursed expenses must be identified either by making a separate payment or by specifically indicating the separate amounts where both wages and expense allowances are combined in a single payment. [Emphasis added.]

§ 31.3401(a)-1(b)(2): Traveling and other expenses. Amounts paid specifically--either as

---

2(...continued)
F.2d 876 (5th Cir. 1974); Prince v. Commissioner, T.C. Memo. 1997-324.

advances or reimbursements--for traveling or other bona fide ordinary and necessary expenses incurred or reasonably expected to be incurred in the business of the employer <u>are</u> <u>not</u> <u>wages</u> and are not subject to withholding.  Traveling and other reimbursed expenses must be identified either by making a separate payment or by specifically indicating the separate amounts where both wages and expense allowances are combined in a single payment.  [Emphasis added.]

United's attempt to recharacterize as deductible compensation the day-trip per diem travel allowances and the excess portion (over $14) of the overnight per diem travel allowances should be rejected.

<u>The Substantiation Requirements of Section 274(d)</u>

I do not understand the casual manner by which the majority opinion bypasses the substantiation requirements of section 274(d).

It appears to me that the substantiation requirements for travel expenses under section 274(d) are applicable to day-trip travel allowances, as well as to overnight travel allowances. The language of section 1.274-5T(a)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46027 (Nov. 6, 1985), states that "no deduction or credit shall be allowed with respect to--(1) Traveling away from home * * *".  This regulatory language does not say that the requirements of section 274(d) do not apply to day-trip travel expenses.  Any such reading would be contrary to the explicit language of the statute, as pointed out below.

Further, the first two sentences of section 1.274-5(e), Income Tax Regs., as applicable to 1985, 1986, and 1987, and section 1.274-5T(f)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46027 (Nov. 6, 1985), confirm that even if travel expenses are paid in connection with the "performance of services" and are otherwise deductible under section 162 (which is what the majority opinion holds), they must still satisfy the substantiation requirements of section 274(d).

A closer look at the relevant statutory language is helpful. There are important differences in the language and operation of section 162(a)(2) (an allowance provision that relates only to overnight travel expenses) and of section 274(d)(1) (a disallowance provision that relates to any and all travel expenses).

Section 162(a)(2) provides that deductions for all taxpayers are allowed for any:

> (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business.  [Emphasis added.]

Section 274(d)(1), however, in pertinent part provides:

> SEC. 274(d).  Substantiation required.-- No deduction or credit shall be allowed--
>
> > (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),

* * * * * * *

  unless the taxpayer substantiates by adequate records or by
sufficient evidence * * * [Emphasis added.]

  Note that in section 274(d)(1) the "away from home" language

is located within the parenthesis (whereas in section 162(a)(2)

that language is outside the parenthesis), making it clear that

all travel expenses are covered by the disallowance provision of

section 274(d).  Note also the familiar definitions of "taxpayer"

in sections 1313(b) and 7701(a)(1) that include the term

"corporation".[3]

  Various tax treatises and court opinions explicitly or

implicitly recognize that the substantiation requirements of

section 274(d) apply to corporations, not just to employees of

corporations (as the majority opinion may be read to suggest).

For example, see Bittker & Eustice, Federal Income Taxation of

Corporations and Shareholders, par. 5.03[1], at 5-12 (7th ed.

2000); Stechel, 520 Tax Mgmt. (BNA), "Entertainment, Meals, Gifts

---

  [3] In his concurring opinion, Judge Ruwe notes that United's
per diem allowances covering meal expenses for day trips are not
deductible as travel expenses under United States v. Correll, 389
U.S. 299 (1967).  Rather, however, than qualifying as deductible
compensation under sec. 162(a)(1), such day trip meal expenses
remain nondeductible to United because they represent the payment
by United of personal living expenses of United's employees.  See
sec. 262 and the Supreme Court's holding in Correll.  With regard
to the various incidental travel expenses that also were included
in United's day trip per diem allowances, they remain subject to
the substantiation requirements of sec. 274(d).  See sec.
274(d)(1).

and Lodging--Deduction and Recordkeeping Requirements," at A-33 (1998); 6 Mertens, Law of Federal Income Taxation, ch. 25D (1998), for implicit recognition of the application of the substantiation requirements of section 274(d) to corporations; see also numerous published court opinions illustrating the application of the substantiation requirements of section 274(d) to corporations:  Meridian Wood Prods. Co. v. United States, 725 F.2d 1183, 1188-1189 (9th Cir. 1984); Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 169-170 (1978); Buddy Schoellkopf Prods., Inc. v. Commissioner, 65 T.C. 640, 642-645 (1975); Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 741-743 (1973).

Also, under section 274(a), Congress restricted the deductions for entertainment, amusement, and recreation expenses where such expenses are not directly related to or associated with the active conduct of a taxpayer's trade or business.  Under section 274(e), however, Congress provided an exception for such expenses where a taxpayer affirmatively elects to treat, and in fact does so treat, the expenses as wage compensation subject to income and employment tax withholding.

Congress obviously knew how to provide a recharacterization option and an election out of the section 274(d) substantiation requirements.  Had Congress intended to provide taxpayers such as United with a similar recharacterization option and an election out of the substantiation requirements of section 274(d) for

travel expenses, it could have so provided. Congress not having done so, it appears to me inappropriate for us to do so.

## $44 or $14 Per Diem Limitation on Overnight Per Diem Allowances

With regard to the section 274(d) substantiation requirements applicable to United's overnight per diem allowances, respondent's regulations and rulings are to be given particular weight. See sec. 274(d); sec. 1.274-5(c)(2)(b), Income Tax Regs. The majority opinion, however, ignores the specific rulings that respondent promulgated which apply to employer-provided overnight travel allowances and to the years in controversy herein.

Rev. Rul. 80-62, 1980-1 C.B. 63 (hereinafter referred to as the $44 Ruling), provided that, for overnight travel allowances, the maximum per diem deduction available without substantiation was $44 per day, which included travel expenses for meals and lodging, laundry, cleaning and pressing of clothing, and fees and tips for services, such as for waiters and baggage handlers.

However, Rev. Rul. 84-164, 1984-2 C.B. 63 (hereinafter referred to as the $14 Ruling), provided that the $44 Ruling did not apply where the "per diem allowances [were] intended to cover only employee meal expenses, as when the employer pays for directly or furnishes the lodging, or when there is no lodging expense." (Emphasis added.) The $14 Ruling's stated purpose is to amplify and to limit the $44 Ruling.

It appears to me that the above language constitutes a blanket disqualification of the $44 Ruling where there are no lodging expenses relating to overnight travel to be paid out of per diem travel allowances. As I read the language of the $14 Ruling, in the context of overnight travel, the maximum allowable amount that may be deducted under any provision of section 162 without substantiation can be no more than $14 per day in two instances: (1) Where only employee meals are covered by the allowances, or (2) where there are no lodging expenses. Our memorandum opinion to the contrary in Murphy v. Commissioner, T.C. Memo. 1993-292, does not constitute binding precedent and should not be followed.[4]

In the present case, because there were no lodging expenses to be paid by United's employees out of the overnight per diem travel allowances the employees received, section 274(d)(1) limits the maximum amount deemed substantiated under United's per diem program to $14 per day.

Union Negotiations

United and the labor unions specifically bargained for and characterized the per diem allowances in the union contracts as travel expenses. United did not pay employment taxes on the per

_____

[4] In Rev. Proc. 89-67, sec. 2, 1989-2 C.B. 795, 797, it was made even clearer that without lodging expenses per diem allowances would be subject to the $14 limitation.

diem allowances, and the employees did not report the per diem allowances in income.

Where the tax consequences differ for the characterization of expenses as either travel or compensation, the characterization of the expenses by the parties should be adhered to. The majority opinion simply negates the bargaining positions of United, on the one hand, and of the labor unions and the employees, on the other, to pay and to receive travel expenses, not compensation income.

In his concurring opinion, Judge Thornton is correct to ask what was bargained for between United, its employees, and the unions. The answer, however, is explicitly provided in the stipulated facts -- per diem travel allowances, not compensation. Paragraph 13 of the stipulation of facts states the following:

> Because pilots and flight attendants continuously traveled for United, requiring specific documentation for meals and incidental expenses would have been administratively burdensome. The per diem arrangement was thus designed to reimburse the employees for meals and incidental travel expenses, without requiring them to retain and submit receipts for each individual expenditure. [Emphasis added.]

The fact that for the administrative convenience of United and the employees the per diem allowances were computed on an hourly basis does not convert the allowances into something other than travel expenses.

## Judicially Created Loophole

The majority opinion appears to create a broad loophole for corporations and would circumvent Congress' intent with regard to the substantiation requirements of section 274(d).

The opinion appears to allow expenses that would be disallowed under section 274(d) to be recharacterized as deductible compensation, provided the expenses are paid by an employer to an employee in the context of any employment relationship.  See majority op. p. 6, where the "but for" analysis is set forth.  Because corporations generally have periods of limitation held open longer than individuals, the opinion would allow corporations on their tax returns to treat expenses as travel expenses and to avoid income and employment tax withholdings thereon.  After the periods of limitations have expired for the employees, the corporations could recharacterize the travel expenses as compensation.  The corporations would obtain an income tax deduction for the recharacterized compensation, but the employees would avoid income and employment taxes on the compensation.

The majority opinion erroneously relies on Commissioner v. Kowalski, 434 U.S. 77 (1977), in which the Supreme Court held that cash meal allowances provided to a State trooper were to be included in the trooper's gross income.  The meal allowances were not claimed as travel expenses, and substantiation of the

expenses was not at issue.  Further, neither party herein relied on nor even cited Kowalski.

Lastly, by recharacterizing the travel expenses as deductible compensation for 1987 and later years, the portion of the previously treated travel expenses that represented meal and entertainment expenses become freed from the various percentage limitations applicable thereto and become fully deductible.  See sec. 274(n).  This is exactly what United is seeking to accomplish in this case for 1987.

For the reasons stated, I dissent.

COHEN and COLVIN, JJ., agree with this dissenting opinion.